HENRY A. PETTER SUPPLY
COMPANY, Appellant,

v.

HAL PERRY CONSTRUCTION COMPA-
NY, Finis Gilbert, d/b/a Gilbert Corpo-
ration, Murray Independent School Dis-
trict, and Aetna Casualty and Surety
Company, Appellees.

Court of Appeals of Kentucky.

March 10, 1978.

John A. Gregory, Jr., Hughes & Gregory, Murray, for appellant.

John C. Lovett, Lovett, Lewis, Johnson & Shapiro, Benton, James A. Anderson, III, Paducah, for appellees.

Before GANT, HOGGE and WINTER-SHEIMER, JJ.

GANT, Judge.

This is an action by Henry A. Petter Supply Company, a supplier to a subcontractor, against the prime contractor, Hal Perry Construction Company and its surety, Aetna Casualty and Surety Company.

The facts in evidence disclose that in early 1971 Perry received a contract for the construction of the Murray Vocational School, which contract provided in part that ". . . the Contractor shall provide and pay for all labor, materials, equipment . . necessary for the proper execution and completion of the work." The contract further required the Contractor to furnish a bond "covering the faithful performance of the contract and the payment of all obligations arising thereunder . . ." Perry procured a performance and payment bond from Aetna which adopted the contract by reference binding Aetna "to all persons who furnish labor and materials . . ."

One of the subcontractors under Perry was the appellee, Finis Gilbert, d/b/a Gilbert Corporation, who was subsequently awarded the subcontract for the plumbing,

heating and air conditioning on May 12, 1971. Prior to the subcontract, on April 21, 1971, Petter sent a proposal to Perry stating that they would furnish materials ordered by Gilbert on this project on "open account" if Perry would agree to pay for the material invoiced by "check made payable to Henry A. Petter Supply Company and Gilbert Corporation." This proposal was accepted at the bottom of the letter as follows:

We agree to this arrangement
HAL PERRY CONSTRUCTION CO.
By: /s/ Hal Perry
Date: 4–23–71

Perry was undertaking two construction jobs at the time and the evidence indicates that he became worried that material used on another job by Gilbert was being billed to the vocational school job. It also was apparent that both Perry and Petter were fearful that Gilbert was financially unstable. On June 18, 1971, about two months after Perry had agreed to make all checks to Gilbert for materials furnished by Petter to both Gilbert and Petter, jointly, Perry wrote a letter to Petter stating that he would "not be responsible for the debts" of Gilbert unless (1) prior approval was obtained; (2) materials itemized; (3) project specified, and (4) cost does not exceed agreed amount. This letter was received by Petter but they did not respond or agree to its demands or terms.

After this letter of June 18, Perry made two payments by checks to Petter and Gilbert jointly totalling $9,434.80, the last one in February, 1972, without any indication of prior approval or performance of the other terms of that letter except as hereafter indicated. Petter continued to furnish material to Gilbert on open account. On each item furnished he sent to Perry what Petter refers to as an invoice and Perry calls a delivery ticket. Perry admits knowing that Petter continued to supply materials to Gilbert but denies knowing that they were being furnished on open account. The record does not indicate whether the invoice showed the exact job and there is no testimony that any item exceeded the contract amount.

At the completion of the job, Perry paid Gilbert $12,500 without requiring an affidavit from Gilbert that all laborers and materialmen had been paid; without ascertaining the open account at Petter; and without making Petter a joint payee as he had agreed on April 23, 1971. It is stipulated that at this time Gilbert owed Petter $6,543.10.

Petter brings this action as third party beneficiary under the contract between Perry and the Murray Board of Education; as third party beneficiary under the performance and payment bond with Aetna; and for breach of the agreement of April 23, 1971, by Perry to make all checks payable to Gilbert and Petter jointly in return for supplying material to Gilbert on open account. The original action asserted a mechanic's lien but it was subsequently stipulated that this was not timely filed.

This is a classic case of third party beneficiary. There is absolutely no question in the minds of this Court that Petter was such under both the contract with the Murray Board of Education and under the bond with Aetna. The quoted language from both makes this manifestly clear. In *American Radiator and Standard Sanitary Corporation v. Albany Municipal Housing Commission*, Ky., 441 S.W.2d 433, 435 (1969) the court stated:

The appellees, the prime contractor and its paid surety, assert that the only right of recovery, if any, that the appellants have would be the one set out in the lien statutes and that that would be from any unpaid funds due the prime contractor from the Housing Commission. We do not agree with this assertion because we conclude that the language of the bond itself not only was intended to afford protection to the Housing Commission but also to protect " * * * all persons doing work or furnishing skill, tools, machinery or materials under or for the purpose of the contract" for the construction of the housing project. In fact, all materialmen and workmen involved in the project are third-party beneficiaries

of this bond regardless of whether they contracted directly with the prime contractor or a subcontractor.

There is also no question in our minds that the proposal in the letter of April 21, 1971, and its acceptance by Perry on April 23 constituted an agreement between the parties that Petter would furnish materials to Gilbert on open account and that Perry would pay for them by checks made payable to Petter and Gilbert jointly.

Additionally, KRS 376.070(1) states as follows:

Contractor or architect to apply payments to claims—Exception where lien waived. —(1) Any contractor, architect or other person who builds, repairs or improves the property of another under such circumstances that a mechanics' or materialman's lien *may be imposed* on the property shall, from the proceeds of any payment received from the owner, pay in full all persons who have furnished material or performed labor on the property. (Emphasis added).

This section is not made dependent upon the assertion of a lien as provided elsewhere in Chapter 376 but requires payment to materialmen where the circumstances are such that a "lien *may* be imposed." It requires a standard during construction, not retroactive application, and where this standard is ignored a lien may not lie if the time therefor elapses, but the duty of the contractor is clear.

■ Accordingly, we must examine the effect of the letter of June 18, 1971. It was apparently a unilateral attempt by the contractor to modify his duties under (a) the contract with the Board of Education and/or (b) the performance and payment bond, and/or (c) the agreement with Petter and/or (d) KRS 376.070(1). The Court finds that it fails to do any of these. It is not disputed that the parties to a contract creating a third party beneficiary may vary the terms of the contract without the consent of the beneficiary unless the beneficiary materially changes his position in reliance on the contract. See *Restatement, Contracts* (2d) § 142. This being a continu-

ing benefit, it might have been changed by the parties (note plural) to the contract or bond. However, the action of only one of these parties will not suffice.

The agreement by the parties pursuant to the April 21, 1971, letter was not modified by this unilateral action of June 18, 1971. Petter never agreed to it nor is his silence to be construed as conduct which will estop him from asserting his rights. Indeed, the conduct of Perry in paying Petter one month and eight months after the letter is at least some indication that the silence was not relied upon by Perry. Also, the letter of June 18 referred to responsibility for debts of another while the agreement set out the method for payment of an open account on a particular project. We believe this specific unilateral disclaimer could never avoid the contractor's obligation under the statute.

■ The lower court based his ruling on the fact that "Petter was negligent and careless in failing to take any note whatsoever of Mr. Perry's letter of June 18, 1971 . . . ." and that he had not acted "reasonably and diligently as a reasonably prudent man." We are at a loss to understand this use of the law of tort in a contract case. However, as the court said in the case of *First National Bank of Louisville v. Progressive Casualty Insurance Co.,* Ky., 517 S.W.2d 226, 229 (1974), "[w]e are also reminded of the equity rule that as between two innocent parties the one who made the loss possible is the one who should suffer." All Perry had to do was what he agreed to do and what he had done on two previous occasions, i. e., make the final check of $12,500 payable to Gilbert and Petter.

Accordingly, this case is reversed and remanded with instructions to enter judgment against Finis Gilbert, d/b/a Gilbert Corporation, the court having previously held that the appellant was entitled to same without entering that judgment; against Hal Perry Construction Company and against Aetna Casualty and Surety Company. We make no finding of the respective rights of the appellees, as all were repre-

sented by the same counsel and these rights were not before the Court.

All concur.